US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 2 2 2019

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:19CR20020-004 |
| | ) | |
| CORY JEREMIAH PHILLIPS | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement. The agreement of the parties is as follows:

### COUNT OF CONVICTION

1.  The Defendant, CORY JEREMIAH PHILLIPS, hereby agrees to plead guilty to Count One of the Indictment charging that the Defendant knowingly and intentionally combined, conspired, confederated and agreed with each other, and with others known and unknown to the Grand Jury to distribute a controlled substance, namely, a mixture or substance that contained a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21 U.S.C. § 841(a)(1), all in violation of Title 21 U.S.C. § 846. If the Court accepts this Plea Agreement, once the Court has pronounced sentence, the United States will dismiss the Forfeiture Allegation of the Indictment.

### ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA(S)

2.  The Defendant has fully discussed with defense counsel the facts of this case and the elements of the crime to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crime to which the Defendant is pleading guilty, and admits that there

is a factual basis for this guilty plea. The following facts are true and undisputed:

a. The CORY JEREMIAH PHILLIPS Drug Trafficking Organization (PHILLIPS DTO) has been in operation in the Western District of Arkansas and elsewhere for the past five years. Credible and reliable information has revealed that the DTO distributed multi-pound quantities of methamphetamine on a weekly basis. The investigation has revealed that Russell Hofer, Ryan Miller, Chris Murphy, Megan Casey, and Quan Phung were members of the PHILLPS DTO.

b. From June 2018 to the present, the Drug Enforcement Administration (DEA) has been investigating the Phillips DTO. Through confidential source (CS) interviews, CS controlled purchases, telephone toll analysis, search warrants and physical surveillance, Agents determined that CORY JEREMIAH PHILLIPS is the head of the Phillips DTO and the DTO operated in the Western District of Arkansas. CORY JEREMIAH PHILLIPS utilized close associates, like Hofer, Murphy, Miller, and Phung that he trusted in order to distribute large quantities of methamphetamine and collect drug debts in the Crawford and Sebastian County area, as well as in the Eastern District of Oklahoma.

c. Through Confidential Source (CS) controlled purchases, physical and electronic surveillance, Agents determined multi-pound quantities of methamphetamine were delivered by vehicle to leaders in the Phillips DTO. These deliveries were orchestrated by CORY JEREMIAH PHILLIPS but PHILLIPS did not physically make contact with the methamphetamine. Members in the DTO, such as Hofer, Miller, Murphy, and Phung received pound quantities as directed by CORY JEREMIAH PHILLIPS. The proceeds from the sale of methamphetamine were directed back to CORY JEREMIAH PHILLIPS.

d. A confidential source (CS) was developed in June of 2018. Information

provided by the CS was verified through text messages, toll analysis and surveillance. The CS stated that CORY JEREMIAH PHILLIPS obtained approximately 30 pounds of methamphetamine at a time. The CS advised CORY JEREMIAH PHILLIPS had individuals involved in the DTO store the illicit drugs at their residences, thus negating Phillips' risk of being caught with the controlled substances.

    e. On August 25, 2018, a post *Miranda* interview was conducted with a Cooperating Defendant (CD#1). CD#1 advised he/she had been selling methamphetamine to make money for a living. The CD#1 admitted the approximately 23 ounces of methamphetamine he/she had when arrested belonged to CD#1 and that he/she obtained the methamphetamine from Ryan Miller. CD#1 stated that in the weeks before CD#1's arrest, CD#1 received approximately a pound of methamphetamine a day from Ryan Miller and that Ryan Miller was supplied by CORY JEREMIAH PHILLIPS. CD#1 stated that he/she owed Miller $14,500 for fronted methamphetamine.

    f. In April 2019, a post *Miranda* interview was conducted with Cooperating Defendant #3 (hereinafter CD#3). During this interview, CD#3 advised that he/she transported large quantities of methamphetamine and marijuana at the direction of CORY JEREMIAH PHILLIPS. CD#3 advised that he/she worked for CORY JEREMIAH PHILLIPS as a transporter of methamphetamine to other members of the PHILLIPS DTO. CD#3 advised that from the fall of 2017 to early 2019, he/she routinely delivered multi pound quantities of methamphetamine to members of the PHILLIPS DTO, which included Ryan Miller, Quan Phung and Christopher Murphy. CD#3 said from March 2018 through December 2018, CD#3 delivered approximately 25 pounds of methamphetamine a week for CORY JEREMIAH PHILLIPS. CD#3 further stated that he/she would receive all or partial payment from members of the PHILLIPS DTO for the

methamphetamine delivered. CD#3 advised that he/she would almost daily deliver the drug proceeds to CORY JEREMIAH PHILLIPS at the PHILLIPS' residence located in Uniontown, Arkansas. CD#3 further stated that on multiple occasions he/she witnessed members of the PHILLIPS DTO deliver the proceeds from the sale of methamphetamine to CORY JEREMIAH PHILLIPS in Uniontown, Arkansas. CD#3 and CORY JEREMIAH PHILLIPS spoke in person in reference to the sale of methamphetamine by the PHILLIPS DTO and CD#3 advised that those conversations would often take place at CORY JEREMIAH PHILLIPS residence in Uniontown, Arkansas.

      g.     On March 26, 2019, law enforcement conducted a post *Miranda* interview with Cooperating Defendant #4 (hereinafter CD#4) in reference to CD#4 obtaining methamphetamine from Miller. CD#4 was arrested on March 2, 2019 in possession of approximately one (1) pound of methamphetamine following a traffic stop in Leflore County, Oklahoma. CD#4 stated that he/she left Miller's residence after meeting with Miller and obtaining the methamphetamine from Miller. CD#4 advised that he/she had been obtaining methamphetamine from Miller since January of 2019 and he/she had obtained pound quantities three or four times from Miller since January 2019. CD#4 advised that he/she would go to Miller's residence and the deals would routinely take place in the living room or the bedroom of the residence.

      h.     The Defendant, CORY JEREMIAH PHILLIPS stipulates and agrees that he conspired with others to distribute more than 500 grams of a mixture or substance containing methamphetamine in the Western District of Arkansas, Fort Smith Division.

## ADVICE OF RIGHTS

3.     The Defendant hereby acknowledges that he has been advised of and fully

understands the following constitutional and statutory rights:

a. to have an attorney and if the Defendant cannot afford an attorney, to have one provided to him and paid for at the United States' expense;
b. to persist in his plea of not guilty;
c. to have a speedy and public trial by jury;
d. to be presumed innocent until proven guilty beyond a reasonable doubt;
e. to confront and examine witnesses who testify against him;
f. to call witnesses on his behalf;
g. to choose to testify or not testify and that no one could force the Defendant to testify; and,
h. to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

4. The Defendant hereby acknowledges that he understands with respect to the count to which he pleads guilty, he thereby WAIVES all of the rights listed as (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

5. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

6. The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

7. The Defendant agrees that if after signing this Plea Agreement the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, intentionally incomplete, or intentionally untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this Agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

8. The Defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the United States shall be allowed to use and to introduce into evidence any one or more of the following:

    a. admissions against interest, both oral and written, made by the Defendant to any person;
    b. statements made by the Defendant during his change of plea hearing;
    c. the factual basis set forth in the Plea Agreement;
    d. any testimony given under oath in these proceedings or to a grand jury or a petit jury;
    e. any and all physical evidence of any kind which the Defendant has provided to the United States; and,
    f. any and all information provided by the Defendant to the United States' attorneys, or to federal, state, county, and/or local law enforcement officers.

## MAXIMUM PENALTIES

9. The Defendant hereby acknowledges that he has been advised of the maximum penalties for the count to which he is pleading guilty. By entering a plea of guilty to Count One of the Indictment, the Defendant agrees that he faces:

Count One
- a. a maximum term of life imprisonment;
- b. a mandatory minimum term of 10 years imprisonment;
- c. a maximum fine of $10,000,000;
- d. both imprisonment and fine;
- e. a term of supervised release for not less than 5 years which begins after release from prison;
- f. a possibility of going back to prison if the Defendant violates the conditions of supervised release; and,
- g. a special assessment of $100.00 for each count of conviction.

## CONDITIONS OF SUPERVISED RELEASE

10. The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

- a. The Defendant shall report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the Defendant to report to a different probation office or within a different timeframe.
- b. After initially reporting to the probation office, the Defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the Defendant shall report to the probation officer as instructed.
- c. The Defendant shall not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer.
- d. The Defendant shall answer truthfully the questions asked by the probation officer.
- e. The Defendant shall live at a place approved by the probation officer. If the Defendant plans to change where he lives or anything about his living arrangements (such as the people the Defendant lives with), the Defendant shall notify the

      probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

f. The Defendant shall allow the probation officer to visit the Defendant at any time at his home or elsewhere, and the Defendant shall permit the probation officer to take any items prohibited by the conditions of the Defendant's supervision that he observes in plain view.

g. The Defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the Defendant from doing so. If the Defendant does not have full-time employment he shall try to find full-time employment, unless the probation officer excuses the defendant from doing so. If the Defendant plans to change where the Defendant works or anything about his work (such as the position or the job responsibilities), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

h. The Defendant shall not communicate or interact with someone the Defendant knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

i. If the Defendant is arrested or questioned by a law enforcement officer, the Defendant shall notify the probation officer within 72 hours.

j. The Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers).

k. The Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

l. If the probation officer determines that the Defendant poses a risk to another person (including an organization), the probation officer may require the Defendant to notify the person about the risk and the Defendant shall comply with that instruction. The probation officer may contact the person and confirm that the Defendant has notified the person about the risk.

m. The Defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## PAYMENT OF MONETARY PENALTIES

11. The Defendant agrees that monetary penalties to include special assessments, fine, and/or restitution imposed by the Court will be (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c, and (ii), submitted to the Treasury Offset Program so that any federal

payment such as an income tax refund or transfer of returned property the defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## NO OTHER CHARGES

12.     The United States agrees that no other federal charges, which stem from the activities described in the Indictment, will be brought against the Defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

13.     The parties acknowledge that the Court shall consult, and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

14.     The Defendant acknowledges that discussions have taken place concerning the possible guideline range, which might be applicable to this case.  The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court.  Further, the Defendant acknowledges that the actual range may be greater than contemplated by the parties.  In the event that the actual guideline range is greater than the parties expected, the Defendant agrees that this does not give him the right to withdraw his plea of guilty.

## RELEVANT CONDUCT CONSIDERED

15.     At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the

Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

16. In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## CONCESSIONS BY THE UNITED STATES

17. The United States agrees not to object to a recommendation by the Probation Office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that the Defendant receive two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the United States will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if the Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following a) falsely denies, or makes a statement materially inconsistent with, the factual basis set forth in this agreement, b) falsely denies additional relevant conduct in the offense, c) is untruthful with the United States, the Court or probation officer, or d) materially breaches this Plea Agreement in any way.

## UNITED STATES' RESERVATION OF RIGHTS

18. Although the United States agrees not to object to certain findings by the Probation Office or to rulings of the Court, it reserves the right to:

    a. make all facts known to the Probation Office and to the Court;
    b. call witnesses and introduce evidence in support of the Presentence Report;
    c. contest and appeal any finding of fact or application of the Sentencing Guidelines;
    d. contest and appeal any departure from the appropriate Guideline range; and,
    e. defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the United States in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

19. The United States' concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## AGREEMENT NOT BINDING ON THE COURT

20. The parties agree that nothing in this Agreement binds the District Court to:

    a. make any specific finding of fact;
    b. make any particular application of the Sentencing Guidelines;
    c. hand down any specific sentence;
    d. accept any stipulation of the parties as contained in this Plea Agreement; and,
    e. accept this Plea Agreement.

21. The United States and the Defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

### AGREEMENT DOES NOT BIND ANY OTHER ENTITY

22. The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

### SPECIAL ASSESSMENT

23. The Defendant agrees to pay $100 as the special assessment in this case.

### REPRESENTATIONS BY DEFENDANT

24. By signing this Plea Agreement, the Defendant acknowledges that:

    a. The Defendant has read this Agreement (or has had this Agreement read to him) and has carefully reviewed every part of it with defense counsel.
    b. The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement.
    c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement.
    d. The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it.
    e. The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

### REPRESENTATIONS BY DEFENSE COUNSEL

25. By signing this Plea Agreement, counsel for the Defendant acknowledges that:

    a. Counsel has carefully reviewed every part of this Agreement with the Defendant and this Agreement accurately and completely sets forth the entire agreement between the United States and the Defendant.
    b. Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the United States has agreed to do in exchange for the plea of guilty.
    c. Counsel believes that the Defendant's decision to enter into this Agreement

is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

26. The Defendant and his attorney both acknowledge that this Plea Agreement constitutes the entire agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his plea to guilty.

Dated this 8 day of August, 2019.

_____
CORY JEREMIAH PHILLIPS
Defendant

_____
AUBREY BARR
Attorney for Defendant

DUANE (DAK) KEES
UNITED STATES ATTORNEY

By: _____
Candace L. Taylor
Assistant U.S. Attorney