IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.        CRIMINAL NO. 2:19-CR-20020-004

CORY JEREMIAH PHILLIPS                                     DEFENDANT

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Cory Jeremiah Phillips, by attorney, Aubrey L. Barr and for his memorandum, states:

*Procedural Background*

The Defendant, Mr. Phillips, entered a guilty plea to Count One of the Indictment, Conspiracy to Distribute Methamphetamine involving 50 grams or more of methamphetamine and 500 grams or more of a mixture of substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846. The change of plea took place on August 22, 2019. Mr. Phillips has remained in custody since his arrest on May 13, 2019. The Presentence Investigation Report (PSR) calls for an advisory Guideline range of 360 months to life, based on a total offense level of 39 and a Criminal History Category of VI. The Government made two objections to the PSR and the Defense made nine objections to the PSR, which were addressed in the Addendum filed by the probation officer, Tammy Albritton. Three of the objections resulted in corrections being made to the PSR. The Defense restates each of the remaining objections, and addresses them herein.

*Hearing Length*

Mr. Phillips may testify briefly and anticipates his testimony will take no more than ten (10) minutes. No other witnesses are expected for the defense although it is anticipated that the Government may call witnesses that require cross-examination. The undersigned believes this sentencing hearing should take approximately an hour.

*Argument*

**Adjustment for Role in the Offense**

Mr. Phillips objects to the 4 level increase for adjustment for role in the offense. While he was involved in the drug conspiracy, he was not the organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. The facts from the PSR support Mr. Phillips' position that while he was initially involved, many of his co-defendants, including Hofer and Miller, were making arrangements between themselves about the distribution. Furthermore, co-defendant Phung was clearly involved in the distribution of methamphetamine with other sources of supply. Mr. Phillips maintains that he attempted to remove himself from the conspiracy in mid-2018, which is why there are no transactions directly attributed to him, and why he "did not have physical contact with the methamphetamine." (PSR ¶ 17).

Additionally, the evidence supports Mr. Phillips' contention that he had more of an administrative role in the conspiracy, rather than a leader or organizer role. Again, he was initially involved in introducing parties, but the day to day business was organized between other co-defendants, including transactions that Mr. Phillips either had no knowledge of, or that he adamantly opposed participation in like Hofer's January 2018 trip to Texas. (PSR ¶s 48-9).

### *Purity of Methamphetamine*

Various courts around the Nation are not only acknowledging the disparity in sentencing based on the methamphetamine guidelines, but are issuing orders declaring categorical policy disagreements with the "purity-driven" methamphetamine sentencing guidelines. District courts may vary from the guidelines based on categorical policy disagreements as indicated in **Kimbrough v. United States**, 552, U.S. 85, 128 S.Ct. 558 (2007) and **Spears v. United States**, 555 U.S. 261, 129 S.Ct. 840. These Courts have found that there appears to be no empirical basis for harsher treatment of offenses involving higher purity methamphetamine, that methamphetamine purity is no longer an accurate indication of a defendant's role in a drug-trafficking conspiracy, and that the methamphetamine guidelines create unwarranted sentencing disparities between methamphetamine offense and offenses involving other major drugs. **United States v. Bean**, 371 F.Supp. 3d 46 (D. N.H. 2019); **United States v. Hayes**, 948 F.Supp. 2d 1009 (N.D. Iowa 2013); **United States v. Nawanna**, 321 F.Supp.3d 943 (N.D. Iowa 2018); **United States v. Moreno**, Criminal Action No. 5:19CR002 (W.D. Va. Aug. 5, 2019).

Mr. Phillips would ask the Court to take into consideration the trend in district courts for treatment of methamphetamine for sentencing purposes. If the Court agreed to remove the 9,290 grams from the calculation as objected to and as described below, and the Court took the trending view of district courts and treated the methamphetamine as mixture, Mr. Phillips would have a drug quantity level of 30. Although there are other factors to be taken into consideration in sentencing Mr. Phillips specifically, the Court

still may consider where Mr. Phillips starts on the drug quantity table when considering a downward variance.

### Application of § 3553(a) Factors - a Downward Variance is Warranted

In light of the decision by the United States Supreme Court in ***United States v. Booker***, 543 U.S. 220 (2005) making the USSG advisory, and later reaffirmed in ***United States v. Gall***, 552 U.S. 38 (2007) this Court is charged with the duty of imposing a sentence that is **sufficient, but not greater than necessary** to comply with the sentencing purposes set forth in 18 U.S.C. § 3553 (a)(2).

Under 18 U.S.C. § 3553 (a)(1-7), the Court must consider the following seven factors in determining the appropriate sentence to impose, same summarized as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

    (A) to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the Guidelines promulgated by the Sentencing Commission;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and,

(7) the need to provide restitution to the victims.

Regarding the nature and circumstances of the offense, the Court should first consider that Mr. Phillips has acknowledged that his conduct was wrong and has accepted responsibility for his actions. However, Mr. Phillips should not be held responsible for every estimate of methamphetamine sold by every cooperating defendant that made a statement after they were arrested. Mr. Phillips has taken responsibility for those drug amounts attributed to his co-defendants which were actually seized and tested. However, Mr. Phillips should be given the benefit of the doubt when it comes to an exceedingly high estimated drug quantity over an estimated period of time without specificity as to dates or transactions that comes from a cooperating defendant that makes a statement in an effort to improve their situation after their arrest. Furthermore, the PSR indicates that Mr. Phillips "has no assets with can easily be liquidated to pay a fine in full immediately or within the guidelines range," and that a credit inquiry report revealed several accounts with past due balances. (PSR ¶s 124-5). If Mr. Phillips was supplying approximately twenty-four pounds of dope over a period of three months for $1650 to $2,000 per ¼ pound, that would be an estimated $158,400 to $192,000 just with regard to that one cooperating defendant. There is no indication that Mr. Phillips was making that sort of profit, nor that he has any assets to attribute to such profit. This is also not consistent with Mr. Phillips' statement that he sold or coordinated the sale of approximately two pounds of methamphetamine every other week for approximately 18 months unless all other cooperating defendants are

lying about the amount of methamphetamine they were selling for Mr. Phillips. The statements from the cooperating defendants are not consistent with each other across the board. Although each of them ultimately points the finger at Mr. Phillips, their statements regarding estimated sales of methamphetamine at the direction of Mr. Phillips are not consistent with each other and are not consistent with the evidence. Again, Mr. Phillips has taken responsibility for his role in the conspiracy, but every estimate of methamphetamine by every cooperating defendant who had been arrested and was facing federal drug charges should not be attributed to Mr. Phillips.

The PSR also seeks to attribute 27.6 grams of methamphetamine to Mr. Phillips for an arrest of co-defendant Murphy. (PSR ¶ 42-3). Murphy states that he was selling methamphetamine for co-defendant Phung, and Phung states that he had been purchasing meth from two separate individuals not associated with the conspiracy. (PSR ¶s 19, 47). The Government requested that Murphy's statement that he began acquiring marijuana and methamphetamine from Mr. Phillips in July 2018 be added to the PSR, but even with the addition of that statement, it is still not clear which of Phung's sources of supply the 27.6 grams of methamphetamine seized in Murphy's arrest came from. Again, Mr. Phillips should be given the benefit of the doubt and not be held responsible for amounts of methamphetamine that come from ambiguous sources.

Mr. Phillips maintains that he was not involved in the transaction resulting in the arrest of co-defendant Hofer and objects to the 9,290 grams of methamphetamine seized in that arrested being attributed to him. Not only was Mr. Phillips not involved in that transaction, but the vehicle used in the transaction and referenced in the PSR belonged to the sister of the Confidential Informant also referenced in the PSR.

Therefore Mr. Phillips would ask the Court to take into consideration that the entire transaction may not have taken place had the Confidential Informant not only pressured Hofer to make the trip and transaction, but partially facilitated the transaction by providing a vehicle.

Regarding the history and characteristics of the Defendant, Mr. Phillips would ask the Court to take into consideration that both his criminal history and all of the relevant conduct listed in the PSR are completely devoid of any violence. Mr. Phillips has never been charged with a crime of violence, and there are no statements of cooperating defendants regarding use or threats of violence, nor is there any indication of the characteristically violent nature of drug sales located anywhere in the evidence against Mr. Phillips.

Mr. Phillips also maintains a very close relationship with both his parents and his wife, Tamika, and their children. As the letters of support will corroborate, Mr. Phillips was very much involved in the day to day lives of his children and his step-children, participating in their schooling and extra-curricular activities, and assisting other family members on a regular basis prior to his incarceration. Between them, Mr. Phillips and his wife have seven children, and they cared for each of them on a full-time basis. There is no evidence that any drug trafficking activity involved his children or occurred in the presence of his children or family.

In addition, Mr. Phillips is 36 years of age and is currently facing 360 months to life in prison for this offense. If the Court varied downward and he received a 20 year sentence, he would be 56 years old at the time of release, which greatly diminishes the likelihood that he will re-offend. This would surely reflect the seriousness of the offense,

promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant.

If the 9,290 grams from the January 2018 incident with Hofer is removed from the calculation, the total actual methamphetamine would be 670.71 grams, or 13,414.20 kilograms of converted drug weight, which puts Mr. Phillips at a level 34. Because Mr. Phillips is a career offender, that increases his level to 37. Without an adjustment for role in the offense, and with the 3 level decrease for acceptance of responsibility, Mr. Phillips would land on a level 34. Mr. Phillips has an initial criminal history score of 9, or category IV, but because he is a career offender, the resulting criminal history category is VI. The guideline sentencing range would be 262-327 months, from which the Court could depart downward based on the factors located in 18 U.S.C. § 3553(a).

## *Conclusion*

Therefore, Mr. Cory Jeremiah Phillips, for reasons stated in this memorandum, respectfully requests that the Court consider the above and grant him the appropriate downward departures and variances in line with crafting a sentence that is sufficient, but not greater than necessary to comply with the sentencing purposes set forth in 18 U.S.C. § 3553 (a).

    CORY JEREMIAH PHILLIPS, DEFENDANT

    AUBREY L. BARR
    Attorney at Law
    P.O. Box 2224
    Fort Smith, AR 72902-2224
    (479) 785-0123
    (479) 785-4518 Fax
    Ark. Bar I.D. #2010170

By:    /s/ *Aubrey L. Barr*
       Attorney for Defendant

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on December 20, 2019, I have emailed a copy to and electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Candace L. Taylor
United States Attorney's Office
Assistant U.S. Attorney
414 Parker Avenue
P.O. Box 1524
Fort Smith, AR 72901
candace.Taylor@usdoj.gov

            /s/ *Aubrey L.  Barr*
            Aubrey L. Barr